IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CITGO PETROLEUM CORPORATION,

                          Plaintiff,

    v.

RANGER ENTERPRISES, INC.,

                          Defendant.

OPINION AND ORDER

07-cv-657-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This case involves a dispute between a franchisor and its franchisee. Plaintiff CITGO Petroleum Corporation had a gasoline distributor franchise agreement with defendant Ranger Enterprises. Things went well for the first 15 years. Defendant expanded from four to 39 franchised locations and increased its purchases from plaintiff commensurately. In 2005, two things happened that affected the relationship. Venezuelan president Hugo Chavez became a more outspoken critic of the United States. Because Venezuela owned plaintiff's corporate parent, some customers boycotted defendant's facilities to protest Chavez. Also, plaintiff reduced the supply of fuel it had agreed to provide defendant, citing force majeure as the reason and explaining that Hurricane Rita had affected operations at its Lake Charles, Louisiana, refinery. The parties were unable to reach agreement on a new franchise agreement. Plaintiff advised defendant that the agreement would not be renewed

1

when it expired in July 2006; defendant responded by "de-branding." It changed its stores from CITGO to "Road Ranger." Eventually, plaintiff brought this breach of contract action, alleging that defendant's de-branding and its failure to buy its minimum fuel requirements constituted a breach of the parties' franchise agreement. Defendant responded with counterclaims and affirmative defenses, alleging prior material breaches of the agreement and violation of the Petroleum Marketing Practices Act, 15 U.S.C. § 2802.

The case is before the court on plaintiff's motions to dismiss defendant's counterclaims and strike certain of defendant's affirmative defenses. Subject matter jurisdiction exists: plaintiff is a Delaware corporation with its principal place of business in Texas; plaintiff is an Illinois corporation with its principal place of business in the same state and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

Defendant's counterclaims fall into three categories: (1) wrongful nonrenewal of the franchise agreement; (2) brand damage; and (3) failure to supply fuel quantities in accordance with the agreement. Defendant also asserts eight related affirmative defenses. I conclude that defendant's state law counterclaims for wrongful nonrenewal are preempted by the Petroleum Marketing Practices Act, that plaintiff's claim for wrongful nonrenewal is barred by the one-year statute of limitations and that defendant's counterclaims asserting brand damage based on the actions of Venezuelan President Hugo Chavez fail to state a claim for which relief may be granted. However, defendant's breach of contract counterclaim alleging that plaintiff failed to meet its contractual fuel supply obligations is sufficient to survive a Rule 12(b)(6) challenge. The related affirmative defenses based on fuel

2

undersupply raise factual disputes and cannot be stricken.

For the purpose of deciding plaintiff's motions to dismiss, I find that the following facts admitted by defendant in its answer and alleged by defendant in support of its amended counterclaims are material .

ALLEGATIONS OF FACT

On October 7, 1991, plaintiff and defendant entered into a franchise agreement under which plaintiff agreed to provide defendant a monthly allotment of motor fuel and the right to use plaintiff's brand name and trademarks and defendant agreed to use the CITGO trademarks and to purchase a minimum monthly allotment of fuel from plaintiff.  In addition to the franchise agreement, the parties also entered into various station-specific "allowance agreements" whereby defendant agreed to operate each location for a period of either seven or ten years and plaintiff agreed to rebate a certain amount of the purchase price for each gallon of fuel purchased by defendant.  The allowance agreements contained a liquidated damages provision obligating defendant to reimburse plaintiff for the rebates if defendant breached the agreement.

The 1991 franchise agreement was for an initial five-year term with automatic renewals for successive three-year periods unless the agreement was "validly terminated or nonrenewed as provided for in the Petroleum Marketing Practices Act."  The franchise agreement included the following general provisions:

3

> The right of either party to require strict performance by the other party hereunder shall not be affected by any previous waiver forbearance of course of dealing. . . .  This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and may be altered only by writing signed by the parties hereto. . . .  This agreement shall be governed by the laws of the state of Oklahoma.

The agreement continued in effect, with periodic amendments not affecting the quoted provisions, for some fifteen years during which defendant expanded from four to thirty-nine franchised locations.

In the late 1990's, CITGO became a wholly owned subsidiary of Petroleos de Venezuela, S.A., a state-owned company of Venezuela.  Beginning in October, 2005, Venezuela's president, Hugo Chavez, began a campaign of ill will against the United States.  These actions damaged the CITGO brand and led to boycotts that reduced defendant's fuel sales.

On numerous occasions in 2005, plaintiff failed to deliver contractually required fuel purchases to defendant.  On October 5, 2005, following hurricane Rita,  plaintiff declared force majeure at its Lake Charles, Louisiana, refinery.  Subsequently, plaintiff reduced the supply of fuel provided to defendant, forcing it to seek more expensive, alternative fuel supplies.  In fact, damage at the Lake Charles refinery was minor and plaintiff could have obtained sufficient fuel to supply defendant.  Instead, it used the asserted force majeure falsely to mask pre-existing supply problems and avoid its contractual obligations.  Because of the delivery failures, defendant's business nearly failed and it questioned whether it could viably remain a CITGO franchisee.  It sought assurances from CITGO that it would meet

4

its fuel supply commitments from that point forward.

On January 17, 2006, plaintiff delivered a proposed new franchise agreement to defendant to replace the existing agreement, which was to expire by its terms on July 31, 2006, unless renewed. The proposed terms of the new agreement were commercially unreasonable. Plaintiff knew they would be unacceptable to defendant. Plaintiff failed to negotiate for new terms in good faith. On April 28, 2006, plaintiff advised defendant that it would not renew the franchise agreement. After being advised of the intended nonrenewal defendant began re-branding its stores to "Road Ranger," a process that took three months to complete and cost $1.5 million. At the same time, defendant failed to make its required minimum fuel purchases from plaintiff.

In May 2006, defendant's president, Dan Arnold, called plaintiff's representative Brad Winczewski to discuss defendant's re-branding. Winczewski told Arnold that if defendant would "leave quietly," plaintiff would not seek to recover past rebates under the liquidated damage provisions of the allowance contracts. On December 20, 2006, plaintiff sent defendant written notice that its de-branding constituted a breach of the allowance agreements and demanded reimbursement of $2,780,177.40.


OPINION

Before discussing the motion to dismiss defendant's counterclaims, it is necessary to identify them. This is not an easy task. Defendant organizes its allegations under clear and

5

understandable headings, all related to the three different ways in which plaintiff allegedly breached the franchise agreement: (1) by the unreliability of its deliveries; (2) by Hugo Chavez's attacks on the United States; and (3) by its bad faith nonrenewal of the agreement. When it comes to setting out the counts of the counterclaims, however, it tends to lump together all of its allegations under each of the three headings. For example, it labels one count "CITGO'S Breaches of Contract" and includes under that heading its allegations of unreliable deliveries, damage to the brand and failing to offer defendant a commercially reasonable replacement franchise agreement. Under Count II, it lists plaintiff's alleged violations of the Petroleum Marketing Practices Act but Count III is headed, perplexingly, "Alternative Claim for Breach of Contract (Compounded by CITGO'S Violation of the Petroleum Marketing Practices Act.)" Under this heading, defendant repeats many of the same allegations it included in Count I.

The parties' briefing follows the format defendant used to organize its allegations, breaking the alleged breaches into their major components. I will use the same format, but in reverse order.

Plaintiff's motion to dismiss will not be granted unless plaintiff can show that defendant has failed to provide enough factual allegations to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). In addition, when it comes to defendant's affirmative defenses, plaintiff must show that they are insufficient on their face. Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d

6

1286, 1294-95 (7th Cir. 1989).

### A. Wrongful Failure to Renew the Franchise Agreement

Claims for wrongful termination or non-renewal of franchise relationships among refiners, distributors and retailers of motor fuels are governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2802(a). As defendant now concedes, any state law contract claim for bad faith or improper failure to renew the agreement is preempted by the Act, 15 U.S.C. § 2806(1). Dft.'s Br. in Opp., dkt. #33, at ¶ 2. The Act has a one-year statute of limitations, 15 U.S.C. § 2805(a), which provides as follows:

> If a franchisor fails to comply with the requirements of § 2802 or 2803 of this title, such franchisor may maintain a civil action against the franchisor. . . . [E]xcept that no such action may be maintained unless commenced within 1 year after the later of
> (1) the date of termination of the franchise or nonrenewal of the franchise relationship. . . .

The date of non-renewal was July 31, 2006. Defendant did not assert its counterclaims until February 29, 2008, more than eighteen months later. It appears that defendant's counterclaims for wrongful nonrenewal are barred by the statute of limitations.

Unwilling to accept that result, defendant advances several arguments based on the alleged May 2006 telephone discussion during which Winczewski told Arnold that if defendant would "leave quietly," plaintiff would not seek to recover past rebates under the liquidated damage provisions of the allowance contracts. Defendant argues that this conversation exempts it from application of the statute under the doctrine of equitable

7

estoppel but it has additional back-up arguments: the conversation was a modification of the franchise agreement; it constituted a superseding agreement not to bring claims for breach; or it was a waiver of plaintiff's rights. I conclude that none of these positions is legally sustainable.

Turning to the doctrine of equitable estoppel, I note that plaintiff has argued that equitable principles do not apply to the Act, a proposition for which it cites <u>Hill v. Texaco, Inc.</u>, 825 F.2d 333, 334 (11th Cir. 1987) (holding that the general rule for reading equitable principles into federal statutes of limitation did not apply to Petroleum Marketing Practices Act). I need not decide this question, however, because even if the Act would allow an extension of the statute of limitations on a showing of equitable estoppel, defendant has failed to show that the doctrine would apply in this case.

If equitable estoppel were to apply, it would be the federal version of that doctrine because defendant's counterclaim for non-renewal is exclusively a federal claim, governed by a federal statute of limitations. <u>Shropshear v. Corporation Counsel of City of Chicago</u>, 275 F.3d 593, 596 (7th Cir. 2001) (estoppel doctrine must coincide with jurisdiction enacting statute of limitations); <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446, 451 (7th Cir. 1990). Equitable estoppel serves to suspend the running of a statute of limitations during any period in which one party took active steps to prevent the other party from suing. <u>In re Copper Antitrust Litigation</u>, 436 F.3d 782, 790 (7th Cir. 2006). The typical example of equitable estoppel is when a defendant "promis[es] the plaintiff not to plead the statute of limitations

8

pending settlement talks."  Singletary v. Continental Ill. Nat'l Bank and Trust Co. of Chicago, 9 F.3d 1236, 1241 (7th Cir. 1993).

To prevail on this argument, defendant must demonstrate not only that plaintiff took affirmative steps to lull defendant into inaction, but that defendant actually and reasonably relied on the conduct to delay bringing suit.  Smith v. Potter, 445 F.3d 1000, 1010 (7th Cir. 2006).  However favorably to defendant the allegations in the complaint are read, it  it is evident that they do not make out a claim of equitable estoppel.  Even if Winczewski's representations in May 2006 were "affirmative steps to lull," the lulling came to an abrupt end when plaintiff demanded reimbursement in its December 22, 2006 letter.  That letter eliminated any possibility that defendant could reasonably rely on Winczewski's oral representations as extending the statute of limitations.  Not that it needed any such reliance.  When it received the letter, it still had seven months under the statute in which to bring suit.  Hi-Lite Products Co. v. American Home Products Corp., 11 F.3d 1402, 1407 (7th Cir. 1993) ("'[A] defendant is not estopped to raise a limitations point because of any alleged 'lulling' of the plaintiff into inaction until after the limitation period where the 'lulling' period, if there was any, expired months before the statute barred the action and where there was ample time and opportunity for the plaintiff to avail [himself] of any legal rights he has.'") (quoting Reat v. Illinois Central R.R. Co., 47 Ill. App.2d 267, 197 N.E.2d 860, 865 (1964)).

With this path blocked, defendant turns to his second argument, which is that it was

9

reasonable to rely on the May 2006 telephone exchange because it constituted a modification, or separate binding agreement, that was independently enforceable notwithstanding the December 2006 demand letter. Assuming the conversation was an agreement, it could not be anything other than a modification of the existing agreement because it was made during the term of the agreement and directly affected available remedies under the agreement. (Defendant's third argument, that the conversation was a superseding or supplemental agreement can be ignored.). However, the franchise agreement provides that the agreement "may be altered only by writing" and Oklahoma law enforces such provisions. 12A Okla. Stat. § 2-209(2):

> A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

Moreover, even when the agreement does not forbid oral modification explicitly, 15 Okla. Stat. § 237 provides that "[a] contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

Seizing on the concept of an executed oral agreement, defendant argues that it could encompass a promise not to enforce a right for an indefinite period that is "executed," that is, fully carried out by one of the parties. Allen Farms, Inc. v. Broce Construction Co., 134 P.3d 852, 855 (Okla. Ct. App. 2005) ("When parties orally agree to an alteration of a contract, and such contract, as amended, is fully carried out, this constitutes, as to such amended matters, an executed contract.").

10

Execution of a contract (and thereby delivering on a promise) eliminates the concern that a party to a written contract would fabricate an oral modification to avoid its obligations under the contract. A promise to forbear from exerting one's rights under a contract is a creature of another sort. It is difficult to imagine a situation in which forbearance would prove the existence of a modification to the original agreement. In this case, to pick a good example, defendant's lack of action could as easily been negligent delay in filing suit. This would be a problem for defendant: under Oklahoma law, the subsequent executed oral agreement must be established by 'positive, clear and convincing' proof." Id. (quoting Dewberry v. Universal C.I.T. Credit Corp., 1966 OK 77, ¶ 9, 415 P.2d 978, 979).

A second problem looms as well. How, in the absence of a definite period of promised forbearance, could one say that the alleged contract has been fully carried out and thus "executed"?

Defendant's final argument is that plaintiff's statements in the May 2006 telephone conversation served to waive plaintiff's rights to take action against defendant. Defendant offers no support for this argument and I need not address it.

I conclude that even when the allegations in the counterclaims are read in defendant's favor, they do not support a claim for wrongful nonrenewal of its franchise agreement with plaintiff. Plaintiff's motion to dismiss will be granted as to this counterclaim.

In a related argument, defendant suggests that the federal statute of limitations is defeated by an Oklahoma statute that permits a party to assert compulsory counterclaims, even if they would have been barred by a statute of limitations had they been brought

11

directly. 12 Okla. Stat. § 2013. Such a state statute does not operate to alter a federal statute of limitations. Just as state equitable estoppel common law cannot serve to extend a federal statute of limitations, a state statute cannot alter a federal statute of limitations. The Supremacy Clause of the Constitution, Art. VI, cl. 2, invalidates any state law that conflicts or interferes with an Act of Congress. Rose v. Arkansa State Police, 479 U.S. 1, 3 (1986). A state law that would effectively vacate a federal statute of limitations is such a conflict.

## B. Brand Damage

Relying on the fact that Venezuela owns plaintiff's parent company and Venezuela's president has been outspoken in his criticism of the United States, defendant alleges that plaintiff breached its implied duty to defendant not to impair the value of the CITGO brand. Defendant does not allege that plaintiff or any of its officers or employees took any act to impair the brand but alleges that President Chavez's comments had that effect, because they angered defendant's potential customers.

This counterclaim suffers from a lack of allegations. Defendant does not allege that Hugo Chavez was acting as an officer of plaintiff when he made these comments, other than to say that he was in control of plaintiff's parent company and "therefore" in control of plaintiff. A mere allegation that one company controls another company is not sufficient to state a claim against the second company based on the actions of the first one. Dole Food

12

Co. v. Patrickson, 538 U.S. 468, 474 (2003) (holding that companies that were indirect subsidiaries of State of Israel were not instrumentalities of Israel). Defendant does not allege that Chavez was acting on behalf of plaintiff's corporate parent when he made the statements. Thus, the critical issue is how Chavez's actions might be attributable to plaintiff, so that plaintiff could be said to have impaired the value of the brand. Defendant makes a leap of faith in its brief: "When the CITGO brand was damaged [by Chavez], CITGO was *necessarily* in breach of the parties' franchise agreement, because the trademarks that CITGO was delivering to Ranger were no longer a "benefit" to Ranger as the parties' [sic] intended and their contract required." Dft.'s Br., dkt. #35, at 5.

Defendant suggests that plaintiff might be vicariously liable for Chavez's action under the doctrine of veil piercing. However, nothing in the counterclaims remotely supports a veil piercing theory. In general, "[t]he veil separating corporations and their shareholders may be pierced in some circumstances," but these instances are the "rare exception, applied in the case of fraud or certain other exceptional circumstances." Dole Food Co., 538 U.S. at 475. To disregard the corporate entity, defendant must show either (1) that the separate corporate existence is a design or scheme to perpetuate fraud; or (2) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation. King v. Modern Music Co., 33 P.3d 947, 952 (Okla. Ct. App. 2001). In other words, it must appear that one corporation is merely a dummy or sham. Defendant's allegations fall far short of stating a claim that political speeches by the

13

Venezuelan president constituted a breach of contract by plaintiff.

### C. Failure to Deliver Adequate Fuel Supplies

For the purpose of this motion, plaintiff concedes that plaintiff failed to meet its contractual fuel supply obligations during 2005. However, plaintiff contends that, like the state law failure to renew counterclaims, this counterclaim is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. § 2806(a)(1), which provides:

> [N]o State or any political subdivision thereof may adopt, enforce, or continue in effect and provision of law or regulation (including any remedy or penalty applicable to a violation thereof) with respect to . . . . the nonrenewal . . . . of any such franchise relationship. . . .

Defendant's breach of contract claim for the 2005 non-delivery by plaintiff is not a law regulating nonrenewal of the franchise agreement. Therefore, it is unaffected by the preemption statute. In arguing to the contrary, plaintiff relies on Shukla v. BP Exploration & Oil, Inc., 115 F.3d 849 (11th Cir. 1997), but its reliance is misplaced. Shukla holds that a state law fraud claim can be preempted if the fraud claim is "intimately intertwined" with the non-renewal claim. Id. at 857. Defendant's counterclaim is not a fraud claim and its claim for failure to deliver adequate fuel supplies in 2005 is not remotely related to its non-renewal claim. Instead, it seeks independent damages for breach of the contract prior to non-renewal. I conclude that the Act does not preempt defendant's breach of contract counterclaim for plaintiff's failure to deliver the contractually required fuel.

14

D. <u>Affirmative Defenses</u>

Defendant advances eight affirmative defenses: (1) prior material breach of contract; (2) prior material breach of contract–brand damage; (3) unenforceablity of contractual liquidated damages; (4) unclean hands; (5) violation of he Petroleum Marketing Practices Act; (6) frustration of purpose; (7) impossibility of performance; and (8) accord and satisfaction. Plaintiff has moved to dismiss all but the third affirmative defense and defendant has abandoned the fourth. With respect to defenses 2 and 5, plaintiff argues that the affirmative defenses must fail because the related counterclaims for brand damage and wrongful non-renewal have failed. With respect to defenses 1, 6, 7 and 8, defendant argues that the fuel undersupply allegations on which they are based are inadequate and that Uniform Commercial Code sections 2-612 and 2-616 foreclose the defenses.

As an initial matter, defendant argues that the motion to strike affirmative defenses is untimely under Rule 12(f) because it was brought more than twenty days after service of the pleading. Defendant is correct. However, Rule 12(f) permits the court to consider the sufficiency of a defense at any time. I conclude that striking several of the defenses is appropriate notwithstanding the tardiness of the motion. <u>Williams v. Jader Fuel Co.</u>, 944 F.2d 1388, 1399 (7th Cir. 1991) (court may reach merits of untimely motion to strike). I conclude that the second, fourth and fifth affirmative defenses must be stricken, but that the other affirmative defenses survive the motion.

Defendant's second affirmative defense rests on its contention that plaintiff

15

committed a material breach of contract, excusing defendant from its obligation to continue to perform when it impaired the value of the CITGO brand. Because I have concluded that defendant has alleged no facts to support a finding of breach on the basis of brand damage, I will strike the affirmative defense as unnecessary.

For a fifth affirmative defense, defendant alleges that plaintiff violated the Petroleum Marketing Practices Act. Defendant does not explain how that Act provides an affirmative defense. It appears that what defendant is arguing is that plaintiff's wrongful non-renewal of the franchise agreement was a prior material breach, excusing defendant from further performance. However, de-branding occurred before non-renewal, so the non-renewal cannot serve as a prior material breach. To the extent that defendant is seeking damages for the non-renewal, its affirmative defense is no more than a restatement of the non-renewal counterclaim, which is barred by the statute of limitations. This affirmative defense will be stricken as insufficient on its face.

This leaves the first, sixth, seventh and eighth defenses, all based on plaintiff's alleged failure to deliver contractually required fuel quantities. The relevant factual allegations are that on numerous occasions in 2005, plaintiff failed to meet its fuel supply commitments under the agreement, requiring defendant to find other more expensive sources of fuel and threatening to drive it out of business. In addition, plaintiff alleges that it continued unsuccessfully to obtain assurances from plaintiff that it would meet its future supply obligations up to the time negotiations on the renewal agreement failed. These allegations are sufficient to support the defense that plaintiff had materially breached the agreement

16

before defendant began its de-branding.

Although defendant makes much of the ambiguity of defendant's force majeure allegations, I find these irrelevant to the determination of the sufficiency of the defense allegations. The failure to supply fuel is the principal basis for the allegation of breach; whether plaintiff wrongfully attempted to justified the breach with a declaration of force majeure is not an essential element of that claim.

Plaintiff concedes for purposes of this motion that failure to deliver the required amount of fuel was a material breach, but it argues that even if the breach were material, UCC §§ 2-612 and 2-616 would not allow defendant to use the breach it as justification for its failure to perform. In relevant part, the provisions provide:

> 12A Okla. Stat. § 2-612. **"Installment Contract"; Breach**
>
> *   *   *
>
> (3) Whenever nonconformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole. But the aggrieved party reinstates the contract if he accepts a nonconforming installment without seasonably notifying of cancellation or if he brings an action with respect only to past installments or demands performance as to future installments.
>
> *   *   *
>
> 12A Okla. Stat. § 2-616. **Procedure on Notice Claiming Excuse**
>
> (1) Where the buyer receives notification of a material or indefinite delay or an allocation justified under the preceding section he may by written notification to the seller as to any delivery concerned, and where the prospective deficiency substantially impairs the value of the whole contract under the provisions of this article relating to

17

     breach of installment contracts (Section 2-612), then also as to the whole,

     (a) terminate and thereby discharge any unexecuted portion of the contract; or
     (b) modify the contract by agreeing to take his available quota in substitution.

Plaintiff's attempt to strike the defenses on the basis of these provisions fails for two reasons. First, the UCC provisions are rebuttals to the affirmative defenses. Plaintiff was under no obligation to anticipate the arguments and set out affirmative allegations to overcome them. Second, the facts as alleged do not foreclose the possibility that its defenses could succeed.

As to § 2-612, the facts alleged permit the inference that defendant notified plaintiff of its intent to terminate the contract because of plaintiff's failure to deliver. Defendant alleges that it "was questioning whether it could viably remain a CITGO franchisee and it sought assurances from CITGO that, from that point forward, CITGO would meet its fuel supply commitments. . . ." Although this statement falls short of alleging notification of cancellation directly, it implies that defendant told plaintiff it intended to cancel because of the delivery failures, unless plaintiff could provide assurances that its deliveries would be more reliable.

As to § 2-616, its reference to § 2-615(a), 'the preceding section," presupposes a legitimate excuse that prevents delivery, such as force majeure. However, defendant directly alleges that plaintiff had no legitimate force majeure excuse, but rather that the declared force majeure was a ruse to avoid contract compliance. If the allegations of the defense are

18

true, the provision is inapplicable.

Plaintiff offers no additional or distinct arguments for the dismissal of affirmative defenses 6, 7 and 8. Therefore, I conclude that they will stand.

ORDER

IT IS ORDERED that plaintiff CITGO Petroleum Corporation's motion to dismiss defendant Ranger Enterprises, Inc.'s amended counterclaims and strike its affirmative defenses is GRANTED as it concerns the counterclaims I have identified as defendant's second and third amended counterclaims based on wrongful non-renewal and brand damage and defendant's affirmative defenses for prior material breach of contract by brand damage, unclean hands and violation of he Petroleum Marketing Practices Act. In all other respects, it is DENIED.

Entered this 27th day of August, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

20

Case: 3:07-cv-00657-bbc   Document #: 43   Filed: 08/27/08   Page 20 of 20